UNITED STATES DISTRICT COURT
WESTERN DISTRICT OF NEW YORK

---

| | | |
|---|---|---|
| FRANCISCO RAMOS, | | |
| | Plaintiff, | **DECISION**<br>**and** |
| v. | | **ORDER** |
| DONAHUE, Lieutenant of the Southport Correctional Facility,<br>McINTOSH, a Correctional Officer of the Southport Correctional Facility,<br>C. BENNETT, a Correctional Officer of the Southport Correctional Facility,<br>J. ALVES, Clinical Physician of the Southport Correctional Facility,<br>B. WOJNAICK, Clinical Physician of the Southport Correctional Facility, and<br>SGT. LITWILER, Sergeant of the Southport Correctional Facility, | | 01-CV-306F<br>(consent) |
| | Defendants. | |

---

APPEARANCES:       FRANCISCO RAMOS, *Pro Se*
                   90-T-3989
                   Great Meadows Correctional Facility
                   P.O. Box 51
                   Comstock, New York 12821

                   ELIOT L. SPITZER
                   Attorney General, State of New York
                   Attorney for Defendants
                   MICHAEL A. SIRAGUSA
                   Assistant Attorney General, of Counsel
                   Statler Towers, 4th Floor
                   107 Delaware Avenue
                   Buffalo, New York 14202

## JURISDICTION

On May 30, 2003, the parties to this action consented, pursuant to 28 U.S.C. § 636(c), to proceed before the undersigned. The matter is presently before the court on

Defendants' motion for summary judgment (Doc. No. 65), filed January 19, 2005.

## BACKGROUND

Plaintiff Francisco Ramos ("Plaintiff"), commenced this civil rights action *pro se* on April 26, 2001, while incarcerated at Southport Correctional Facility ("Southport" or "the facility"), alleging 11 violations of his Eighth Amendment rights when Defendants, employees of the New York State Department of Correctional Services ("DOCS"), subjected him to excessive force and inadequate medical attention. In an order filed August 27, 2001, Chief District Judge Richard J. Arcara dismissed the action as against Defendants Dove, Goord and McGinnis for lack of personal involvement in the alleged unlawful actions against Plaintiff.[1] The court's March 5, 2002 Scheduling Order (Doc. No. 27), established November 29, 2002 as the deadline for discovery, with motions to compel discovery to be filed by December 13, 2002.

Defendants initially moved for summary judgment on February 28, 2003 (Doc. No. 41), seeking dismissal of all claims based on a failure to exhaust administrative remedies as required by the Prison Litigation Reform Act ("PLRA"), 42 U.S.C. § 1997e(a). In a Decision and Order filed December 6, 2004 ("December 6, 2004 Decision and Order) (Doc. No. 63), summary judgment was granted in favor of Defendants with regard to Plaintiff's claims pertaining to a restricted diet and fabricated misbehavior reports and such claims (Fifth, Sixth, Seventh, Eighth, Ninth, and Tenth

---

[1] As the Fourth Cause of Action was asserted only against McGinnis, it has been dismissed in its entirety.

Causes) were dismissed.[2]  The undersigned also established January 20, 2005 as the deadline for Defendants to move for summary judgment on the merits of Plaintiff's remaining claims, December 6, 2004 Decision and Order at 15, in which Plaintiff specifically alleges that Defendants Lieutenant Richard Donahue ("Donahue"), and Correctional Officers Courtney Bennett ("Bennett"), and Donald McIntosh ("McIntosh"), assaulted Plaintiff on February 27, 2001 at the conclusion of a disciplinary hearing. (First, Second, Third Causes of Action), and further claims that, following such assault, Defendants Dr. John Alves ("Dr. Alves"), Registered Nurse Bernard Wojnarek ("Wojnarek"), and Sergeant Jodi Litwiler ("Litwiler") intentionally failed to obtain and provide medical treatment for the injuries Plaintiff sustained during the assault. (Eleventh Cause of Action).

On January 19, 2005, Defendants filed the instant motion seeking summary judgment on the merits of the remaining claims, *i.e.*, the First, Second and Third Causes of Action.  Defendants' Motion (Doc. No. 65).  Also filed on January 19, 2005, in support of Defendants' Motion, are Defendants' Statement of Undisputed Facts (Doc. No. 66) ("Defendants' Undisputed Facts Statement), the Declarations of Richard Donahue ("Donahue Declaration") (Doc. No. 67), with attached exhibits A through C ("Donahue Declaration Exh(s). __"), Donald McIntosh ("McIntosh Declaration") (Doc. No. 68), Courtney Bennett ("Bennet Declaration") (Doc. No. 69), Thomas Mulhern (Doc. No. 70) ("Mulhern Declaration"), with attached exhibits A and B ("Mulhern Declaration

---

[2] Although summary judgment was granted as to Plaintiff's claims regarding the restricted diet based on Plaintiff's failure to exhaust such claims as required under the PLRA, 42 U.S.C. § 1997e(a), summary judgment dismissing Plaintiff's claims regarding the filing of fabricated inmate behavior reports was based on Plaintiff's consent to the dismissal of such claims.  December 6, 2004 Decision and Order at 10.

Exh(s). __"), Dr. John Alves ("Dr. Alves Declaration") (Doc. No. 71), with attached exhibits ("Dr. Alves Declaration Exh(s). __"), Bernard Wojnarek, R.N. ("Wojnarek Declaration") (Doc. No. 72), and Jodi Litwiler ("Litwiler Declaration") (Doc. No. 73), together with a Memorandum of Law in Support of Defendants' Motion for Summary Judgment ("Defendants' Memorandum") (Doc. No. 74). By Order filed January 21, 2005 (January 21, 2005 Order) (Doc. No. 75), Plaintiff's response to Defendants' motion was to be filed by February 28, 2005, with any reply filed by March 18, 2005. Plaintiff, however, never responded in opposition to summary judgment.

Rather, on February 2, 2005, Plaintiff filed a motion ("Plaintiff's Motion") (Doc. No. 76), supported by the attached affidavit of Plaintiff ("Plaintiff's Affidavit") seeking to amend the March 5, 2002 Scheduling Order to permit Plaintiff to take discovery of Defendants, explaining that his legal papers were intentionally misplaced by "some of the defendants co-workers and perhaps even one of the defendants himself . . . ," yet admitting that Plaintiff had not previously conduct any discovery within the time-frame established by the March 5, 2002 Scheduling Order. Plaintiff's Affidavit ¶ 2. On February 15, 2005, Defendants filed the Declaration of Assistant Attorney General Michael A. Siragusa in Response to Plaintiff's Motion to Amend the Scheduling Order (Doc. No. 78) ("Siragusa Declaration"), opposing Plaintiff's motion, arguing Plaintiff had sufficient time to complete discovery, one summary judgment motion had already been decided and another was pending, and Plaintiff offered no reasonable explanation as to why he chose not to engage in discovery in the four years that had elapsed since commencing the action. Siragusa Declaration ¶¶ 3-11. Defendants further objected to the additional delay that would result from the requested extension. *Id*. ¶ 13. On March

1, 2005, Plaintiff filed a reply affidavit in further support of the motion ("Plaintiff's Reply Affidavit") (Doc. No. 79), reiterating his desire to amend the March 5, 2002 Scheduling Order to permit Plaintiff an opportunity to conduct discovery, but without giving any reason for failing to conduct discovery to that point.  By order filed March 18, 2005 ("March 18, 2005 Order") (Doc. No. 80), Plaintiff's motion was denied.

On March 28, 2005, Plaintiff moved for an extension of time in which to file objections to the March 18, 2005 Order (Doc. No. 81).  By order filed June 16, 2005 (Doc. No. 82), the request was granted.  Accordingly, on July 5, 2005, Plaintiff filed Objections to the March 18, 2005 Order ("Plaintiff's Objections") (Doc. No. 83).

Based on the following, Plaintiff's Objections, treated as a motion for reconsideration of the March 18, 2005 Order ("Reconsideration Motion") (Doc. No. 83), is DENIED; Defendants' motion seeking summary judgment (Doc. No. 65), is GRANTED.

## **FACTS**[3]

On February 27, 2001, Plaintiff, then incarcerated at Southport, attended a Tier II disciplinary hearing in the hearing room conducted by Hearing Officer Donahue.  It is undisputed that while Plaintiff, Donahue and McIntosh were in the hearing room, a struggle ensued after the hearing tape recorder had been turned off, although the circumstances regarding the struggle differ.

According to Plaintiff, in the middle of the hearing, Donahue turned off the tape

---

[3] Taken from the pleadings and motion papers filed in this action.

recorder and asked Defendant C.O. McIntosh to "take this piece of shit [Plaintiff] out of here."  Complaint ¶ 27.  Plaintiff maintains that he was then assaulted by McIntosh and C.O. Bennett who stomped on Plaintiff's head, knocking Plaintiff unconscious.  *Id*. ¶¶ 28-35.  According to Plaintiff, he awoke in his cell, completely naked with no one around, but that other inmates reported seeing Plaintiff laying in the shower for an hour, not moving, and that Defendant correctional officers returned to the shower, cut Plaintiff's clothing off of him, photographed plaintiff, and then carried Plaintiff, still nude, to his cell.  *Id*. ¶¶ 36-39.  After awakening in his cell, Plaintiff requested an emergency sick call for treatment of lower chest and head pain, a swollen left forehead, cut, swollen and bloody nose, numerous scratches and cuts on his left knee and right elbow, a "big cut over his enormously swollen left eye, eye sight damage and big bumps across his forehead," painful bruises below his left shoulder blade and spine, and severe chest pains, but Defendants failed to properly accommodate such request.  *Id*. ¶¶ 40-42, 45-46.

Plaintiff alleges that despite repeated sick call requests, he never received appropriate medical treatment for the injuries until and was forced to endure pain until the injuries healed without any treatment.  Complaint ¶¶ 46-58.  Plaintiff maintains he continues to suffer severe head, neck and spine pain as a result of the injuries and the sight in his left eye remains blurry.  *Id*. ¶¶ 46, 59.

In contrast, Defendants maintain that at the conclusion of the hearing at 9:55 A.M. on February 27, 2001, Donahue announced his intention to stop the tape recording device as the presentation of evidence had concluded.  Defendants' Undisputed Facts

Statement ¶ 8; February 27, 2001 Tier II Hearing Transcript[4] ("Hearing Tr.") at 7; February 27, 2001 Inmate Misbehavior Report;[5] Use of Force Report.[6]  When Plaintiff refused several direct orders by Donahue to stand, exit the room and return to his cell, and became verbally abusive toward Donahue and McIntosh, Donahue ordered McIntosh to removed Plaintiff from the hearing room and return Plaintiff to his cell, giving the order pursuant to 7 N.Y.C.R.R. § 251-1.2(d), thereby authorizing the use of physical force to enforce compliance with a lawful direction and to quell a disturbance. Defendants' Undisputed Facts Statement ¶¶ 9 -10; Use of Force Report.  Plaintiff's continued refusal to comply with Donahue's order necessitated use of force by Defendants McIntosh, Bennett and C.O. Doud to remove Plaintiff from the hearing room, and carry him to B-1 Gallery No. 2 shower where Plaintiff was secured without further incident.  Defendants' Undisputed Fact Statement ¶¶ 11-14; Use of Force Report.

Following the incident, Plaintiff was examined by Nurse DeMeritt at 10:00 A.M., the same day, who recorded on the Use of Force Report that Plaintiff complained of facial and back pain.  Use of Force Report, Part B.  Upon examining Plaintiff, McDermitt recorded Plaintiff had sustained a "tiny 3 mm abrasion" on his nose, and a "2 cm reddened area" above his left eyebrow, but that Plaintiff was alert and oriented, with no visible swelling, injuries or abrasions, and his mouth and back were both clear.  Use of Force Report, Part B.  The February 27, 2001 entry to Plaintiff's Ambulatory Health

---

[4] Donahue Declaration, Exh. A.

[5] Donahue Declaration Exh. B.

[6] Donahue Declaration Exh. C.

Record[7] corroborates these findings. DeMeritt advised Plaintiff to keep the cut on his nose clean to prevent infection, and to take Advil as needed for any pain relative to his left eye which DeMeritt would order. Use of Force Report, Part B. The Use of Force Report indicates the type of force used was a "body hold," and a notation at the bottom of the Use of Force Report, Part B indicates only "minimal force" was used. *Id*.

Other correctional officers not involved in the incident, including Sgt. Mulhern, and C.O.s Dellacorino, Portalatin, Murphy and Paluch then entered the shower to take "use of force" photos of Plaintiff with a video camera. Defendants' Undisputed Fact Statement ¶¶ 15-18. At 11:04 A.M., Plaintiff, who had been seated on a bench in the shower, stood up and was placed against the wall to permit C.O. Murphy to cut Plaintiff out of his outer clothing, leaving Plaintiff in his underwear, to permit the taking of use of force photos and examination by the facility's nurse. *Id*. ¶ 18. At 11:06 A.M., Nurse DeMeritt entered the shower and examined Plaintiff, who was not verbally responsive. *Id*. ¶ 19. At 11:07 A.M., when the correctional officers attempted to take use of force photos, Plaintiff stood up and then went limp, feigning unconsciousness. *Id*. ¶ 20. Two Polaroid photos were taken before Sgt. Mulhern became concerned that Plaintiff's continued uncooperative behavior placed Plaintiff in jeopardy of being dropped, and directed the correctional officers to place Plaintiff on the shower floor and exit the shower. *Id*. At the direction of Mulhern, the Watch Commander returned Plaintiff, who continued to feign unconsciousness, to his cell at 11:14 A.M. *Id*. ¶ 21.

In connection with the incident, Plaintiff was charged with several DOCS rules

---

[7] Dr. Alves Declaration Exh. A.

violations, including refusing to obey direct orders, violent conduct, and interference with a DOCS employee.  Inmate Misbehavior Report.  On March 5, 2001, in response to a request for "emergency eye care" for left eye discomfort and blurred vision, Nurse Brinks examined Plaintiff and found "no apparent injury noted to eye itself or surrounding orbit. No bruising," although his eye appeared "slightly dry" and eye drops were ordered.  Ambulatory Health Record.

On Ocober 16, 2001, Plaintiff was evaluated by an optometrist, who found no evidence of any trauma or pathology, but referred Plaintiff to an ophthalmologist for evaluation for reading glasses.  Ambulatory Health Record.  At Plaintiff's ophthalmologist examination on March 22, 2002, no trauma, disease, or decrease in visual acuity was detected, and Plaintiff was referred bach to the optometrist for reading glasses.  *Id*.

## DISCUSSION

**1.     Motion for Reconsideration**

Plaintiff filed objections to the March 18, 2005 Order denying Plaintiff's motion to amend the March 5, 2002 Scheduling Order to permit Plaintiff to conduct discovery. Essentially, because discovery had closed on November 29, 2002, the motion to amend the March 5, 2002 Scheduling Order sought to reopen discovery.  Because the parties have consented pursuant to 28 U.S.C. § 636(c) to proceed before the undersigned on all matters, including trial on the merits, no clear error review of the March 18, 2005 Order pursuant to 28 U.S.C. § 636(b)(1)(A) is available from a district judge.  As such, the court treats the motion as seeking reconsideration of the March 18,

2005 Order.

For a party to prevail on a motion for reconsideration, the party must (1) "present '[factual] matters or controlling decisions the court <u>overlooked</u> that might materially have influenced its earlier decision,'" *Griffin Industries, Inc. v. Petrojam, Ltd.*, 72 F.Supp.2d 365, 368 (S.D.N.Y 1999) (internal citations omitted) or (2) the party "must demonstrate 'the need to correct a clear error or prevent manifest injustice.'" *Id.* (underlining added). "The standard for granting such a motion [for reconsideration] is strict, and reconsideration will generally be denied unless the moving party can pont to controlling decisions or data that the court overlooked - matters, in other words, that might reasonably be expected to alter the conclusion reached by the court." *Shrader v. CSX Transportation, Inc.*, 70 F.3d 255, 257 (2d Cir. 1995) (citing cases). Further, the "motion is not a vehicle for "presenting the case under new theories, securing a rehearing on the merits, or otherwise taking 'a second bite at the apple.'" *Griffin Industries, Inc.*, 72 F.Supp.2d at 368 (quoting *Sequa Corp. v. GBJ Corp.*, 156 F.3d 136, 144 (2d Cir. 1998)). Additionally, whether to grant or deny such motions is within the sound discretion of the court. *Id.* (citing cases). *See also Larouche v. Webster,* 975 F.Supp. 490, 492 (S.D.N.Y. 1996) (criteria for motions for reconsideration "strictly construed against moving party") (citing cases). In the instant case, Plaintiff has failed to sustain his burden in seeking reconsideration.

Specifically, Plaintiff's arguments asserted in support of reconsideration fail to either present any facts or controlling decision which the undersigned overlooked and which might have materially influenced the March 18, 2005 Order, or to demonstrate any the need to correct a clear error or to prevent manifest injustice. *Griffin Industries,*

*Inc.*, 72 F.Supp.2d at 368.  Rather, in support of the motion to amend the March 5, 2002 Scheduling Order, Plaintiff stated that a request for production of documents mailed to the New York Attorney General's Office seeking photographs, memoranda, documents, DOCS Directives, grievances and all written complaints filed against Defendants, was returned from the Attorney General's Office accompanied by a letter indicating that Plaintiff's discovery requests would not be honored as the court-ordered cut-off for discovery had passed.  Plaintiff's Reply Affidavit ¶¶ 3-4.  Significantly, although Plaintiff does not specify when the discovery request was delivered to Defendants, Plaintiff does not dispute the Attorney General's assertion that it was after the deadline for discovery on November 29, 2002.  This finding is corroborated by the Plaintiff's filing, on February 10, 2003, of copies of interrogatories propounded by Plaintiff to Defendants (Doc. No. 39), and a First Request for Production of Documents (Doc. No. 40).  As such, Plaintiff's argument in support of the motion is properly characterized as an attempt to reopen discovery, which closed months before Plaintiff made any attempt to engage in discovery.

As Plaintiff fails to point to any facts the undersigned overlooked in the March 18, 2005 Order, Plaintiff has failed to establish any ground for reconsideration.  *Schrader*, 70 F.3d at 257; *Griffin Industries, Inc.*, 72 F.Supp.2d at 368.  Accordingly, Plaintiff has failed to sustain his burden and the motion for reconsideration (Doc. No. 83) is DENIED.

**2.     Summary Judgment**

Defendants seek summary judgment on Plaintiff's claims that Defendants

subjected him to excessive force, and then failed to treat injuries Plaintiff's sustained as a result of such excessive force, in violation of the Eighth Amendment.  Plaintiff has not responded in opposition to summary judgmnent

    Summary judgment of a claim or defense will be granted when a moving party demonstrates that there are no genuine issues as to any material fact and that a moving party is entitled to judgment as a matter of law.  Fed. R. Civ. P. 56(a) and (b); *Celotex Corp. v. Catrett*, 477 U.S. 317, 322 (1986); *Anderson v. Liberty Lobby, Inc.*, 477 U.S. 242, 250-51 (1986); *Rattner v. Netburn*, 930 F.2d 204, 209 (2d Cir. 1991).  The party moving for summary judgment bears the burden of establishing the nonexistence of any genuine issue of material fact and if there is any evidence in the record based upon any source from which a reasonable inference in the non-moving party's favor may be drawn, a moving party cannot obtain a summary judgment.  *Celotex*, 477 U.S. at 322.  Once a party moving for summary judgment has made a properly supported showing as to the absence of any genuine issue as to all material facts, the nonmoving party must, to defeat summary judgment, come forward with evidence that would be sufficient to support a jury verdict in its favor.  *Goenaga v. March of Dimes Birth Defects Foundation*, 51 F.3d 14, 18 (2d Cir. 1995).  Furthermore, although summary judgment may be granted prior to completion of discovery, Rule 56(f) provides that, where it appears from the affidavits of party opposing summary judgment that party is unable to present by affidavit facts sufficient to avoid summary judgment, the court may either deny summary judgment, or order discovery necessary to obtain such facts.

    As stated, Plaintiffs' excessive force claims and failure to treat claims are predicated on the Eighth Amendment.  It is well settled that the Eighth Amendment

prohibits "cruel and unusual" punishment suffered during imprisonment. *Wilson v. Seiter*, 501 U.S. 294, 296-97 (1991); *Sims v. Artuz*, 230 F.3d 14, 20 (2d Cir. 2000). However, not every governmental action affecting the interests or well-being of a prisoner is subject to Eighth Amendment protections. *Whitley v. Albers*, 475 U.S. 312, 319 (1986). Only the unnecessary and wanton infliction of pain constitutes cruel and unusual punishment forbidden by the Eighth Amendment. *Id.*

### A.   Excessive Force

In assessing a prisoner's claim that prison officials subjected him or her to cruel and unusual punishment by using excessive force courts must determine whether the prison officials acted "in a good-faith effort to maintain or restore prison discipline, or maliciously and sadistically to cause harm." *Hudson v. Macmillian*, 503 U.S. 1, 7 (1992). An inmate claiming that prison officials subjected him to cruel and unusual punishment by the use of excessive force has the burden of establishing both an objective and a subjective component of the claim. *Sims*, 239 F.3d at 20-21. Objectively, the plaintiff must establish that the deprivation alleged is sufficiently serious or harmful enough to reach constitutional dimensions which depends on the nature of the claim. *Id.* at 21; *see also Hudson*, 503 U.S. at 8. This component is "contextual and responsive to 'contemporary standards of decency.'" *Id*. at 8. Thus, while a *de minimis* use of force will rarely suffice to state a constitutional claim, a plaintiff is not required to show that the application of force resulted in serious injury. *Id.* at 9-10; *see also Johnson v. Glick*, 481 F.2d 1028, 1033 (2d Cir. 1973)(noting that "not every push

or shove, even if it may later seem unnecessary in the peace of a judge's chambers, violates a prisoner's constitutional rights."). Subjectively, it must be established that a defendant "has the necessary level of culpability, shown by actions characterized by 'wantonness'" in light of the particular circumstances surrounding the challenged conduct. *Blyden v. Mancusi*, 186 F.3d 252, 262 (2d Cir. 1999) (quoting *Wilson*, 501 U.S. at 299). An inmate's constitutional protection against excessive force by corrections officers "is nowhere nearly so extensive as that afforded by the common law tort action for battery." *Johnson*, 481 F.2d at 1033; *Anderson v. Sullivan*, 702 F.Supp. 424, 426 (S.D.N.Y. 1988).

Nevertheless, "no showing of extreme injury is required when the claim is that prison officials used excessive force." *Sims*, 239 F.3d at 21. Rather, "[t]he key inquiry under *Hudson* and its precedents is whether the alleged conduct involved 'unnecessary and wanton infliction of pain.'" *Davidson v. Flynn*, 32 F.2d 27, 30 (2d Cir. 1994) (quoting *Hudson*, 503 U.S. at 8). In the instant case, Plaintiff has failed to establish the need for trial on either the objective or subjective prong of his excessive force claim.

Specifically, although Plaintiff alleges he was subjected to excessive force when Defendants stopped the February 27, 2001 disciplinary hearing and then proceeded to assault him by stomping on his head, causing Plaintiff to lose consciousness, absolutely nothing in the record supports such assertion. Rather, the undisputed record establishes that Donahue did not stop the February 27, 2001 disciplinary hearing in the middle, as Plaintiff alleges, but, rather, after Plaintiff completed presenting his testimony, Donahue concluded the hearing by stating "[a]t this time I'm going to stop to

consider my decision." Hearing Tr. at 6-7. On the Use of Force Report completed by Sgt. Mulhern in connection with the incident, the force used against Plaintiff is characterized as a "body hold." Use of Force Report at 1. Nurse McDermitt's findings upon examining Plaintiff five minutes after the incident showed Plaintiff's injuries were consistent with only "minimal force." Use of Force Report, Part B. Plaintiff, who has not filed anything opposing summary judgment, does not challenge the accuracy of any of this evidence.

> Significantly, Fed. R. Civ. P. 56(e) requires that
>
> When a motion for summary judgment is made and supported as provided in this rule, an adverse party may not rest upon the mere allegations or denials of the adverse party's pleading, but the adverse party's response, by affidavits or as otherwise provided in this rule, must set forth specific facts showing that there is a genuine issue for trial. If the adverse party does not so respond, summary judgment, if appropriate, shall be entered against the adverse party.

In opposing a motion for summary judgment a party "may not simply rely on conclusory statements or on contentions that the affidavits supporting the motion are not credible." *Goenaga*, 51 F.3d at 18 (citing cases). Furthermore, "factual issues created solely by an affidavit crafted to oppose a summary judgment motion are not 'genuine' issues for trial." *Hayes v. N.Y. City Dep't of Corr.*, 84 F.3d 614, 619 (2d Cir.1996)

Here, Plaintiff's failure to submit any evidence contradicting Defendants' version of the use of force incident on February 27, 2001, which is corroborated by facility records, is fatal to Plaintiff's excessive force claim. Tellingly, although Plaintiff alleges numerous other inmates observed Plaintiff as he lay unconscious in the shower

following the incident, Plaintiff has not submitted an affidavit from any such inmate supporting that assertion, nor even suggested such witnesses are willing to do so. The record is thus devoid of any evidence establishing an issue of fact regarding either the objective or subjective element of an Eighth Amendment excessive force claim.

Accordingly, Plaintiff has failed to submit any evidence sufficient to defeat summary judgment on his Eighth Amendment claim and Defendants' motion for summary judgment on the excessive force claims is GRANTED.

### B. Failure to Treat

To show that prison medical treatment was so inadequate as to amount to "cruel or unusual punishment" prohibited by the Eighth Amendment, a § 1983 plaintiff must prove that defendants' actions or omissions amounted to "deliberate indifference to a serious medical need." *Estelle v. Gamble,* 429 U.S. 97 (1976); *Chance v. Armstrong,* 143 F.3d 698 (2d Cir. 1998). The deliberate indifference standard embodies both an objective and a subjective prong. *Hathaway v. Coughlin,* 37 F.3d 63, 66 (2d Cir. 1994). First, under the objective standard, a plaintiff must allege a deprivation "sufficiently serious" to constitute a constitutional violation. *Id.* at 66. This element contemplates a condition of urgency, one that may produce death, degeneration, or extreme pain. *Id.* In the Second Circuit, "[a] serious medical condition exists where 'the failure to treat a prisoner's condition could result in . . . the unnecessary and wanton infliction of pain." *Harrison v. Barkley,* 219 F.3d 132, 136 (2d Cir. 2000) *quoting Chance*, 143 F.3d at 702.

Under the subjective component, plaintiff must show that defendants acted with a "sufficiently culpable state of mind." *Farmer v. Brennan,* 511 U.S. 825, 834-35 (1994). That is, the official must "know of and disregard an excessive risk to inmate health or safety; the official must be both aware of facts from which the inference could be drawn that a substantial risk of serious harm exists, and he must also draw the inference." *Id.* at 837. "The subjective element requires a state of mind that is the equivalent of criminal recklessness. . .." *Hathaway v. Coughlin,* 99 F.3d 550, 553 (2d Cir. 1996). Claims based on differences of opinion are not sufficient to constitute "conscious or callous indifference." *Williams v. Coughlin,* 650 F.Supp. 955, 956 (S.D.N.Y. 1987). A prison official is not required by the Eighth Amendment to provide every form of treatment possible or every form of treatment that would be available to an individual who is not incarcerated. *See Hudson*, 503 U.S. at 9. "Proof of mere negligence . . . will not give rise to a constitutional violation." *Doyle v. Coombe,* 976 F.Supp. 183, 186 (W.D.N.Y. 1997), *aff'd without opinion,* 159 F.3d 1346 (2d Cir. 1991).

Defendants argue that there is insufficient evidence for a reasonable jury to conclude that their actions or omissions amounted to deliberate indifference to any serious medical need of Petitioner because the record fails to establish the existence of any such serious medical need. As discussed, Plaintiff has not filed anything in opposition to summary judgment. As such, based on the undisputed material facts as established by the record, this court finds no evidence creating a material issue of fact that Defendants violated Plaintiff's Eighth Amendment rights by denying appropriate

treatment for a serious medical condition.

First, there is nothing in the record that supports that Plaintiff's medical needs were sufficiently serious to meet the objective component necessary to establish a constitutional violation. Rather, the evidence establishes only that Plaintiff suffered a small abrasion to his nose and a large reddened area above his left eye, but that Plaintiff was alert and oriented. Use of Force Report, Part B; Ambulatory Health Record. On March 5, 2001, Plaintiff's left eye was slightly dry and eye drops were prescribed. Ambulatory Health Record. Eye examinations performed by an optometrist on October 16, 2001, and by an ophthalmologist on March 22, 2002, revealed neither trauma nor pathology to Plaintiff's eye, but, rather, that Plaintiff needed reading glasses. *Id*. Plaintiff does not challenge the accuracy of these records.

Absent Plaintiff's unsupported and uncorroborated allegations contained in the Amended Complaint, there is no evidence that he was suffering from any serious medical need. As such, no evidence supports any reasonable inference that Plaintiff's objective symptoms suggest a serious condition requiring urgent attention. *Goenaga*, 51 F.3d (opposing party must come forward with admissible evidence to avoid summary judgment). Nor does anything in the record tend to show that Plaintiff's medical condition was a life-threatening situation, continued severe pain, or presented a substantial risk of serious harm to him. Moreover, there is no evidence in this record that Defendants knew of and disregarded an excessive risk to Plaintiff's health or safety as required for the subjective prong *Farmer*, 511 U.S., at 837.

Based on the undisputed medical record before the court, Defendants were not presented with facts from which a reasonable inference could be drawn that a substantial risk of serious harm to Plaintiff existed during the relevant time period. There is thus no merit to Plaintiff's Eighth Amendment failure to treat claim.

## **CONCLUSION**

Based on the foregoing, Plaintiff's Objections (Doc. No. 83), treated as a motion for reconsideration of the March 18, 2005 Order ("Reconsideration Motion"), is DENIED; Defendants' motion seeking summary judgment (Doc. No. 65) is GRANTED.  The Clerk of the Court is directed to close the file.

SO ORDERED.

/s/ *Leslie G. Foschio*

LESLIE G. FOSCHIO
UNITED STATES MAGISTRATE JUDGE

DATED:	September 27, 2007
	Buffalo, New York